292 N.J. Super. 542 (1996)
679 A.2d 199
&bottom; 199 STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LISA M. PATURZZIO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1995.
Decided July 26, 1996.
*544 Before Judges LONG, BROCHIN and LOFTUS.
Brent D. Miller, Assistant County Prosecutor, argued the cause for appellant (Daniel J. Carluccio, Ocean County Prosecutor, attorney; Ronald F. DeLigny, Assistant County Prosecutor, of counsel; Mr. Miller, on the brief).
James Pinchak, Assistant Deputy Public Defender, argued the cause for respondent (Susan L. Reisner, Public Defender, attorney; Mr. Pinchak, of counsel and on the brief).
The opinion of the court was delivered by LOFTUS, J.A.D.
The State of New Jersey appeals from an order of the Superior Court, Law Division, Ocean County granting the motion of defendant, Lisa Paturzzio (Paturzzio), to suppress drugs and other evidence obtained in a warrantless search.
On appeal, the State contends:
POINT I
THE TRIAL COURT FAILED TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES IN ASSESSING THE DEVELOPMENT OF PROBABLE CAUSE THROUGH CORROBORATION OF THE INFORMANT'S TIP.
POINT II
THE SEARCH OF DEFENDANT'S POCKETBOOK AT THE STATION WAS A LAWFUL SEARCH INCIDENT TO ARREST.
We have carefully reviewed the record and conclude that the State's contentions are meritorious. We reverse.
*545 At the hearing on the motion to suppress, Investigator Thomas Wallace (Wallace) of the Ocean County Narcotics Strike Force testified. He had been a police officer with the Little Egg Harbor Police Department for eight years, and at the time of the hearing had been a member of the Ocean County Narcotics Task Force for almost two years.
On December 7, 1994, at 9:18 p.m., Wallace received a call from a confidential source which he had not utilized in the past. He believed that the source had either a criminal arrest pending or a criminal conviction. The confidential source advised him that Paturzzio was in the Mystic Islands area at a house occupied or rented by Anthony Manto and that Paturzzio was in possession of a large quantity of phencyclidine (PCP) and marijuana which she was distributing. The confidential source also advised that Paturzzio would be leaving the Manto residence shortly either on foot or in a vehicle operated by Gina DeFeo (DeFeo).
Wallace obtained a physical description of Paturzzio as well as a description of Paturzzio's clothing. The source advised that Paturzzio would have a black knapsack in her possession.
Wallace conducted a check with the Little Egg Harbor Township Police records which revealed that Anthony Manto was residing at 4-7 Cala Breeze Way in Mystic Islands. At approximately 10:00 p.m. on December 7, 1994, surveillance was established at that address. The surveillance was conducted by Wallace and Investigator Hammerle (Hammerle) of the Ocean County Narcotics Strike Force as well as Patrolman Jeff Wilson (Wilson) of the Little Egg Harbor Police Department.
During the surveillance Hammerle observed an older Cadillac Eldorado arrive at 4-7 Cala Breeze Way at approximately 10:25 p.m. The driver was observed exiting the vehicle and walking from the car to the house. Hammerle gave a physical description of the individual via radio to Wallace. The description matched the physical description of DeFeo with whom Wallace was familiar. He was also familiar with the fact that DeFeo drove a Cadillac Eldorado.
*546 At approximately 12:05 a.m., Wallace was advised via radio that Hammerle observed three individuals leave 4-7 Cala Breeze Way and enter a Cadillac Eldorado. Hammerle advised him that the individuals were the "initial female," a "small child" and a "white female." Hammerle gave a description which matched the information given by the source as Paturzzio. Wallace testified that he knew DeFeo had a small child.
Hammerle observed the Cadillac travel from Cala Breeze Way. At this time, Wallace instructed Wilson to make a motor vehicle stop with his marked car. Wilson activated his overhead lights and brought the Cadillac to a stop. Once the vehicle was stopped, Wallace approached the Cadillac from the passenger side. Wallace identified himself to a white female seated in the passenger seat and asked her for her name. She stated that her name was Lisa Paturzzio. DeFeo was seated behind the steering wheel operating the vehicle and a small white male child named Sean, who was DeFeo's son, was also seated in the vehicle.
Wallace testified that there was a black knapsack on the back seat of the passenger's side. He searched the knapsack, finding a Marlboro cigarette pack containing a partially smoked one-inch cigarette. Based upon his training and experience, he believed it to be marijuana. At that time, Wallace advised Paturzzio that she was under arrest. She was transported to the Little Egg Harbor Township Police headquarters by Patrolman Paul Malaga (Malaga).
Wallace was informed by Malaga that prior to being placed into a holding cell, Paturzzio removed a shoulder strap satchel from underneath her sweatshirt and gave it to Malaga. Inside the satchel were twenty-two manila envelopes which later tested positive for PCP, twenty-one separate miscellaneous sized bags of what later tested positive for marijuana and two chunks of a substance that later tested to be hashish.
The trial judge heard the testimony of Wallace, considered the evidence submitted as well as the oral arguments of counsel and granted Paturzzio's motion to suppress. He concluded that the *547 evidence should be suppressed under State v. Probasco, 220 N.J. Super. 355, 532 A.2d 262 (App.Div. 1987), because the informant was not reliable, because there was not sufficient corroboration of the physical description (at trial Wallace could not recall the physical descriptions and they were not contained in his report) or other information to justify an investigatory stop and search of the vehicle and persons.
In State v. Foreshaw, 245 N.J. Super. 166, 174, 584 A.2d 832 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991), this court set forth the relevant law relating to warrantless searches of automobiles:
Under the automobile exception established in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), "the police can stop and search a moving or readily movable vehicle when there is probable cause to believe that the vehicle contains evidence of criminality." State v. Welsh, 84 N.J. 346, 352, 419 A.2d 1123 (1980). See California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406, 412 (1985); State v. Martin, 87 N.J. 561, 567, 436 A.2d 96 (1981). "This exception applies to situations involving parked and unoccupied vehicles encountered by police in public parking lots or on city streets as well as to moving vehicles stopped on the open highway." State v. Martin, supra, 87 N.J. at 567, 436 A.2d 96. There are two reasons for the automobile exception. "`Besides the element of mobility, less rigorous warrant requirements govern because the exception of privacy with respect to one's automobile is significantly less than that relating to one's home or office.'" California v. Carney, supra, 471 U.S. at 391, 105 S.Ct. at 2069, 85 L.Ed.2d at 413. "Even in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception." Id. Despite the breadth of the exception, "`[o]nly the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize.'" California v. Carney, supra, 471 U.S. at 394, 105 S.Ct. at 2070, 85 L.Ed.2d at 415 (quoting United States v. Ross, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). In short, "a warrantless search of a motor vehicle is justifiable... where police have probable cause to believe that the vehicle contains contraband or evidence of criminal activity." State v. Martin, supra, 87 N.J. at 567, 436 A.2d 96.
[Id. at 174-75, 584 A.2d 832.]
In this case although the confidential informant was not reliable, the source advised that Paturzzio was in the Mystic Islands area at a house owned or rented by Anthony Manto and that she was in possession of a large quantity of PCP and marijuana which she was distributing. The source gave Wallace *548 the physical description of Paturzzio as well as a description of her clothing and advised that Paturzzio would be leaving the Manto residence shortly on foot or in a vehicle operated by DeFeo. The source stated that Paturzzio would have a black knapsack in her possession.
Surveillance was established at Manto's residence, 4-7 Cala Breeze Way. Gina DeFeo was seen entering the residence. Wallace knew her and the physical description matched that of DeFeo. Three individuals subsequently left the residence  the initial female, a small child and a white female. Hammerle gave the source's description of Paturzzio to Wallace and it matched.
The fact that Wallace recognized DeFeo, as well as the car she drove; that the description of Paturzzio given by the informant matched that of the second woman; and that Paturzzio left the residence of Anthony Manto in a car operated by DeFeo constitutes sufficient corroboration of the information provided by the source.
We conclude that Wallace and Hammerle had sufficient facts to corroborate the information provided by the source that illegal drug activity was occurring, and that they had probable cause to stop the vehicle. Once having stopped the vehicle, the black knapsack was observed in plain view  another corroborating fact. A search of the car as well as of Paturzzio's knapsack ensued. In the knapsack was found a Marlboro cigarette pack containing a partially smoked cigarette, subsequently determined to be marijuana. Paturzzio was placed under arrest. At the police station a satchel worn underneath Paturzzio's sweatshirt was searched incident to the arrest and yielded the narcotics previously indicated.
In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court held that before a motor vehicle stop may be made, a patrolman must have "at least [an] articulable and reasonable suspicion ... that either the vehicle or an occupant is ... subject to seizure for violation of [the] law." Id., 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673. The decision in Prouse has since been expressly adopted by *549 the New Jersey Supreme Court in State v. Carpentieri, 82 N.J. 546, 549, 414 A.2d 966 (1980).
Probable cause to support the search of an automobile and its occupants can result even when a tip is provided by an informant not previously proven to be reliable when there is sufficient corroboration by police observation. In State v. Probasco, supra, 220 N.J. Super. at 358, 532 A.2d 262, this court noted that:
Under both federal and state constitutional standards, information given by an informant whose inherent reliability has not been shown may nevertheless be used to establish probable cause to obtain a search warrant if the informant's veracity is bolstered by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 237-238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); State v. Novembrino, 105 N.J. 95, 121-123, 519 A.2d 820 (1987).
[Ibid.]
Thus, the same analysis is employed to establish whether there was probable cause to conduct a warrantless search. Id. at 359, 532 A.2d 262. As previously noted, a warrantless search can be established when police sufficiently corroborate an informant's tip. State v. Foreshaw, supra, 245 N.J. Super. at 177, 584 A.2d 832.
The officers' independent investigation revealed that the confidential informant had an intimate knowledge of the defendant's behavior, sufficient to know her plans for the evening, with whom she would be meeting and where, what she looked like, how she was attired, and what she would be carrying on her person. The police surveillance verified all of the information provided by the informant, thus confirming the informant's "veracity" and "basis of knowledge." Id. at 176, 584 A.2d 832, (citing, Illinois v. Gates, supra, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548).
Under the totality of the circumstance, the information provided by the source which was sufficiently corroborated by the officers' independent investigation and exigent circumstances, justified the warrantless search. State v. Waltz, 61 N.J. 83, 87-88, 293 A.2d 167 (1972). The scope of the warrantless search of an *550 automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found. See U.S. v. Ross, 456 U.S. 798, 825, 102 S.Ct 2157, 2173, 72 L.Ed.2d 572, 594 (1982); see also State v. Esteves, 93 N.J. 498, 508, 461 A.2d 1128 (1983). As the informant predicted, Paturzzio was in possession of a black knapsack. Wallace had probable cause to search Paturzzio's knapsack because narcotics may have been secreted within the knapsack.
The search of Paturzzio's pocketbook at the police station was a lawful search incident to a lawful arrest. When the facts known to an officer meet the criteria of a lawful arrest, he may legally conduct a search of the person. See New York v. Belton, 453 U.S. 454, 460-61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775-76 (1981); State v. Bruzzese, 94 N.J. 210, 243 n. 1, 463 A.2d 320 (1983) (Handler, J., concurring); State v. Esteves, supra, 93 N.J. at 506 n. 2, 461 A.2d 1128. An inventory search of personal effects of an arrestee at a police station is permissible under the Fourth Amendment. See Illinois v. Lafayette, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65, 69 (1983); State v. Jackson, 268 N.J. Super. 194, 205 n. 5, 632 A.2d 1285 (Law Div. 1993).
For the foregoing reasons, the officers had probable cause to conduct an investigatory stop of the Cadillac because of corroborated facts received from an informant; to search the vehicle, the persons and contents thereof; and to conduct a search incident to a lawful arrest at the police station.
The order granting the motion to suppress the narcotics seized and other evidence is hereby reversed. The case is remanded for trial consonant with the principles set forth in this opinion.
LONG, P.J.A.D., dissenting.
I would affirm. An informant's tip can be used to support a determination of probable cause in a warrantless search, just as it can to secure a search warrant. State v. Foreshaw, 245 N.J. Super. 166, 177, 584 A.2d 832 (App.Div.), certif. denied. 126 N.J. 327, 598 A.2d 886 (1991). In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. *551 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court considered the standard to be applied in determining whether such a tip is a sufficient basis for a finding of probable cause. In so doing the court approved a totality of circumstances analysis. Id. at 231-32, 103 S.Ct. at 2328-39, 76 L.Ed.2d at 543-44.
[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
[Id. at 238-39, 103 S.Ct at 2332, 76 L.Ed.2d at 548 (citations omitted).]
Gates did not abandon consideration of the factors which constituted the two-pronged test established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Under Aguilar, the source of a tipster's information along with evidence as to why he or she should be believed are prime considerations. Id. at 114, 84 S.Ct. at 1515, 12 L.Ed.2d at 729; State v. Novembrino, 105 N.J. 95, 111-12, 519 A.2d 820 (1987). Gates continued the focus on an informant's veracity and basis of knowledge within the totality of circumstances framework. Gates, supra, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; Novembrino, supra, 105 N.J. at 117-19, 519 A.2d 820.
The facts in Gates are instructive. There the Bloomington Illinois Police Department received an anonymous handwritten letter which stated that Sue and Lance Gates, at a named address, were drug dealers. Gates, supra, 462 U.S. at 225, 103 S.Ct. at 2325, 76 L.Ed.2d at 540. The letter writer said that periodically Sue would drive to Florida and that Lance would later fly down, load the trunk with drugs, and drive back. The writer predicted that Sue would drive to Florida on May 3, and that Lance would fly down a few days later. Ibid. The police investigated the tip. Ibid. They found that a Lance Gates lived at the named address and that "L. Gates" had made a reservation on an Eastern Airlines flight to Florida scheduled to depart on May 5. Id. at 225-26, 103 S.Ct. at 2325-26, 76 L.Ed.2d at 540. Upon arriving in *552 Florida, Lance took a taxi to a motel room registered to Susan Gates and at 7:00 the next morning left the motel with an unidentified woman in a car bearing Illinois plates registered to him. Ibid. The car headed north on an interstate highway frequently used by travelers to the Chicago area. Ibid. Based on this information, an Illinois judge issued a warrant to search the car and the Gateses' residence. Id. at 226-27, 103 S.Ct. at 2326, 76 L.Ed.2d at 541. When the Gateses arrived at their home in Bloomingdale, the police were waiting. Ibid. Three hundred and fifty pounds of marijuana were found in the car and additional marijuana and weapons were found in the house. Ibid. The Illinois Supreme Court affirmed the lower court's suppression of the evidence. Id. at 229-30, 103 S.Ct. at 2327-28, 76 L.Ed.2d at 542-43. It found that the anonymous letter satisfied neither the "veracity" prong nor the "basis of knowledge" prong of Aguilar. Ibid.
The United States Supreme Court reversed, applying the totality of the circumstances analysis discussed here. Gates, supra, 462 U.S. at 246, 103 S.Ct. at 2336, 76 L.Ed.2d at 553. The Court emphasized that even without the tip, the Gateses' trip to Florida and immediate return was just "as suggestive of a pre-arranged drug run, as it is of an ordinary vacation trip." Id. at 243, 103 S.Ct. at 2335, 76 L.Ed.2d at 551. Further, the Court found that the predictive accuracy of the letter bolstered the reliability of the tip:
[t]he anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties not easily predicted. The letter-writer's accurate information as to the travel plans of the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to accurate information of this type of magistrate could properly conclude that it was not unlikely he also had access to reliable information of the Gateses' alleged activities.
[Id. at 245, 103 S.Ct. at 2335-36, 76 L.Ed.2d at 552-53.]
Obviously, the Court in Gates was impressed with the suspicious aspect of the Gateses' activities which it found were consonant with a "drug run" and with the nature of the informant's tip about the Gateses' "not entirely ordinary travel plans" which suggested *553 that the information came from the Gateses' themselves or from someone familiar with them. A fair reading of Gates requires the conclusion that more than the corroboration of innocuous details of wholly unsuspicious circumstances is necessary to bolster the veracity of an untested informant. [See Wayne R. LaFave, Search and Seizure, § 3.3(e) at 161-62 (pocket part) (2d ed. 1987) (footnotes omitted).] The reason for this is that a casual observer or a mere rumormonger may be able to provide a wide range of details relating to easily obtainable facts and conditions existing at the time of the tip without knowing anything of substance about a suspect's criminal activities. Gates, supra, 462 U.S. at 245, 103 S.Ct. at 2335, 76 L.Ed.2d at 552; Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 644 (1969).
What matters is the nature of the details. Under Gates they need to be either suspicious in themselves or indicative of reliability in some other way. Thus, for example, in State v. Probasco, 220 N.J. Super. 355, 532 A.2d 262 (App.Div. 1987) we upheld the conclusion that an untested informant's evidence was reliable under Gates where the informant reported that a particular individual would be delivering drugs to an address while driving a described automobile. The described car arrived at the address, which was in an area known for drug activity; the defendant entered the premises and stayed only a short time which was as suggestive of a drug drop as of any social exchange. In addition, defendant appeared to secrete something under the dashboard of the car which was also consonant with the transportation of contraband. These events were not simply verified innocuous details. They were suspicious in themselves.
If the details are not suspicious, they can still pass muster as indicative of reliability if they are of intimate, hard-to-know aspects of the subject's private life so as to demonstrate that the informant has probable access to reliable information about the suspect's life of crime. Gates, supra, 462 U.S. at 245, 103 S.Ct. at 2335-36, 76 L.Ed.2d at 552-53.
*554 That is not the situation here. There was nothing suspicious about Paturzzio's actions nor was the informant's prediction of her entirely innocuous conduct such that it would engender a belief that he was privy to Paturzzio's criminal secrets. What is present here is inconsequential detail which a disgruntled employee, a nosy neighbor, a regular delivery person or a scorned paramour could supply based on the habit or custom of an entirely innocent citizen. It lacks specifics either as to suspicious content or the process by which the content was obtained that could raise it above "casual rumor." Commonwealth v. Avalo, 37 Mass. App. Ct. 904, 636 N.E.2d 1362, 1364, rev. denied by, 418 Mass. 1110, 642 N.E.2d 302 (1994) (quoting Commonwealth v. Brown, 31 Mass. App. Ct. 574, 581 N.E.2d 505, 507, rev. denied by, 411 Mass. 1105, 586 N.E.2d 10 (1991)). In short, there was nothing to suggest that the informant was telling the truth when he inculpated Paturzzio in criminal activity. See U.S. v. Campbell, 920 F.2d 793, 797 (11th Cir.1991).
This is a fatal flaw under Gates and it is not mere hairsplitting. It goes the heart of the Fourth Amendment's guarantee against unreasonable searches and seizures. The Fourth Amendment simply does not allow an untested tipster to give information to the police and thus subject innocent citizens to searches merely by providing the kind of detail the local mailman could offer about the comings and goings of most of the people on his route. To the extent that State v. Foreshaw holds to the contrary, I respectfully disagree with it.