683 A.2d 575

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOSEPH R. ZUTIC, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1996—Decided October 23, 1996.

Before Judges HAVEY,[1] KESTIN and EICHEN.

*Matthew T. Priore* argued the cause for appellant (*Baldi & Marotta*, attorneys; *Mr. Priore*, on the brief).

*Gary H. Schlyen*, Chief Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava*, Passaic County Prosecutor, attorney; *Mr. Schlyen* of counsel, and on the brief).

The opinion of the court was delivered by

EICHEN, J.A.D.

The primary issue on this appeal is whether a telephone tip from an untested informant consisting entirely of innocuous details concerning defendant's alleged criminal activities, even though the details were corroborated by independent police work, exhibited sufficient indicia of reliability to establish probable cause to search defendant and his motor vehicle under the Fourth Amendment. We conclude that it did not and reverse the denial of the motion to suppress.

Following the denial of his motion to suppress evidence in the Wayne Municipal Court, defendant Joseph R. Zutic was convicted of possession of a controlled dangerous substance (CDS), namely, approximately fifteen grams of marijuana, *N.J.S.A.* 2C:35–10(a)(4); resisting arrest, *N.J.S.A.* 2C:29–2a; possession of CDS in a motor vehicle, *N.J.S.A.* 39:4–49.1; and making an unsafe lane change, *N.J.S.A.* 39:4–88(b). Defendant was acquitted of possession of drug paraphernalia, *N.J.S.A.* 2C:36–2. The municipal court merged the possession of CDS in a motor vehicle into the drug possession conviction and imposed appropriate fines and penalties.

---

[1] Judge Havey did not participate in oral argument. However, the parties consented to his participation in the decision.

Defendant appealed to the Law Division where the trial judge, following a trial *de novo* on the record, denied the motion to suppress and again found defendant guilty of the offenses, imposing the same fines and penalties as the municipal court. This appeal is taken from the Law Division judgment of conviction.

Defendant makes the following arguments on appeal:

*POINT I*

THE POLICE OFFICER LACKED PROBABLE CAUSE TO STOP THE DEFENDANT'S VEHICLE ON THE BASIS OF THE ALLEGED MOTOR VEHICLE VIOLATION.

*POINT II*

THE POLICE OFFICER LACKED PROBABLE CAUSE TO SEARCH THE DEFENDANT'S VEHICLE UNDER ANY EXCEPTION TO THE WARRANT REQUIREMENT.

*POINT III*

THE SUPERIOR COURT ERRED IN UPHOLDING THE SEARCH AND SEIZURE BASED ON THE TIP THAT THE OFFICER RECEIVED.

A.   There was an incomplete and insufficient record from the municipal court with respect to the details of the tip, its veracity and the reliability and basis of knowledge of the confidential informant.

B.   The facts of the case at bar are distinguishable from the facts in *State v. Foreshaw*, and the search of the defendant's vehicle was not objectively reasonable.

*POINT IV*

THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL JUDGE IMPROPERLY MERGED THE TESTIMONY FROM THE MOTION TO SUPPRESS AND SUBSTITUTED THAT TESTIMONY IN ITS ENTIRETY AS THE STATE'S CASE IN CHIEF.

The relevant facts are not in dispute. On July 26, 1993, Detective Michael O'Connor of the Narcotics Bureau of the Wayne Police Department set up surveillance at approximately 6:15 p.m. on Route 23 North in Wayne. He testified that the basis for the surveillance was

information that [was] received from a confidential reliable [2] informer that a vehicle, bearing registration BC-584V, ... a '93 red Toyota, would be travelling up 23 North from New York City after the party had purchased marijuana.

---

[2] Despite this bare characterization, the reliability of the informant was not established in the record. Thus, the informant's "veracity" was not established

The informant's tip had been received at approximately 6:00 p.m. At that time, the informant related that defendant had just departed for New York City in order to purchase marijuana. The officer then testified that a round-trip to New York City for the purpose of purchasing drugs could take between forty minutes and two hours depending on the location of purchase.

Two hours later, at approximately 8:00 p.m., defendant's red Toyota was observed by Detective O'Connor on Route 23 North in the vicinity of Packanack Lake Road. After defendant's vehicle passed Detective O'Connor, the officer proceeded to follow the automobile on Route 23 North in an unmarked van which remained approximately two or three car lengths behind defendant's vehicle. The officer testified he observed defendant effectuate a "sudden change of lanes" from the center to the right lane of the highway without signalling. The officer then indicated that defendant exited from the highway into the parking lot of a service station adjacent to the roadway. Again, defendant purportedly failed to utilize his right turn signal.

Detective O'Connor followed defendant's vehicle into the service station parking lot. As the officer approached, defendant, who had previously exited his vehicle, was re-entering the Toyota. Detective O'Connor identified himself as a police officer and obtained defendant's driving credentials, which apparently verified his identity as Joseph Zutic. According to the officer, defendant appeared "nervous and jittery" and responded evasively to questions concerning the route he had travelled that day. Believing defendant was not answering his questions truthfully, Detective O'Connor advised defendant of his *Miranda*[3] rights and asked him if there were any drugs in the automobile. After receiving a negative response, the officer proceeded to conduct a search of the

by his or her past reliability. *State v. Smith,* 291 *N.J.Super.* 245, 256–57, 677 A.2d 250 (App.Div.1996).

[3] *Miranda v. Arizona,* 384 *U.S.* 436, 478–479, 86 *S.Ct.* 1602, 1630, 16 *L.Ed.*2d 694, 726 (1966).

Toyota and discovered a cigarette box on the right front seat which apparently, when opened, revealed marijuana "roaches." Noticing that defendant was motioning towards the front portion of his belt line, and observing a "bulge," the officer asked defendant whether he had any drugs in his possession, to which defendant replied "no." Not satisfied, the officer attempted to investigate the bulge further with his hand. A struggle ensued, culminating in the recovery of a plastic bag containing suspected marijuana from inside defendant's sweatpants.

Relying primarily on an opinion of this court in *State v. Foreshaw*, 245 *N.J.Super.* 166, 584 *A.*2d 832 (App.Div.), *certif. denied*, 126 *N.J.* 327, 598 *A.*2d 886 (1991), the Law Division judge determined that the State had demonstrated probable cause to make a warrantless stop and search "upon Detective O'Connor's sighting of the vehicle described by the informant and [his subsequent] verification of the informant's details." We disagree and reverse the denial of the suppression motion under the "totality of the circumstances" approach for determining when an informant's data is sufficient to establish probable cause.[4] *See Illinois v. Gates*, 462 *U.S.* 213, 237–38, 103 *S.Ct.* 2317, 2332, 76 *L.Ed.*2d 527, 548 (1983).

In *Illinois v. Gates*, an affidavit submitted in support of the application for a search warrant indicated that an anonymous letter had informed the police in Bloomingdale, Illinois of defen-

---

[4] We note that no other basis exists in the record to justify the search and seizure of the evidence sought to be suppressed in this case. Although the initial stop of the motor vehicle for a suspected motor vehicle violation was valid under the Fourth Amendment, *see Delaware v. Prouse*, 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.*2d 660 (1979); *see also State v. Williamson*, 138 *N.J.* 302, 650 *A.*2d 348 (1994), the ensuing searches were not. The seizure and search of the cigarette box exceeded the permissible scope of the brief investigatory stop because the marijuana roaches were not in plain view. *See State v. Demeter*, 124 *N.J.* 374, 384, 590 *A.*2d 1179 (1991). The subsequent search of defendant and his car were unjustified because the officer was not in fear for his safety, justifying a protective frisk. *See Terry v. Ohio*, 392 *U.S.* 1, 27, 88 *S.Ct.* 1868, 1883, 20 *L.Ed.*2d 889, 909 (1968); *see also State v. Thomas*, 110 *N.J.* 673, 685, 542 *A.*2d 912 (1988).

dants' alleged drug trafficking activities and provided details as to an imminent transaction. The letter read as follows:

This letter is to inform you that you have a couple in your town who strict'y make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

They brag about the fact they never have to work, and make their entire living on pushers.

I guarantee if you watch them carefully you will make a big catch. They are friends with some big drug dealers, who visit their house often.

[462 *U.S.* at 225, 103 *S.Ct.* at 2325, 76 *L.Ed.*2d at 540.]

Through surveillance the details of the letter were corroborated "in major part," 462 *U.S.* at 243, 103 *S.Ct.* 2317, 76 *L.Ed.*2d at 551, and a search warrant was issued. Subsequently, the police executed the warrant when the defendants returned from a thirty-six hour excursion to Florida, seizing drugs and weapons from defendants' car and home.

The Court upheld the search by indicating that information obtained from an informant whose reliability has not been demonstrated in the record may be used to establish probable cause if the totality of the circumstances are sufficient to bolster the informant's veracity. *Id.* at 237–38, 103 *S.Ct.* at 2332, 76 *L.Ed.*2d at 548. In so holding, the Court determined that the letter "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." 462 *U.S.* at 245, 103 *S.Ct.* at 2335–36, 76 *L.Ed.*2d at 552. Accordingly, the Court decided that the judge issuing the warrant "had 'a substantial basis for conclud[ing]' that probable cause existed" to search defendants' car and home. 462 *U.S.* at 246, 103 *S.Ct.* at 2336, 76 *L.Ed.*2d at 553.

Similarly, in *State v. Probasco,* 220 *N.J.Super.* 355, 358, 532 *A.*2d 262 (App.Div.1987), *certif. denied,* 117 *N.J.* 72, 563 *A.*2d 835

(1989), we concluded that detailed information obtained from an untested informant and subsequently corroborated by the observations of the police was sufficient to establish probable cause to search the defendant's motor vehicle. In that case, a police surveillance team was advised by an informant:

[T]hat between 8:00 and 10:00 p.m. that night a white male named David would drive a maroon Ford to a stated address in the municipality to deliver drugs. David would be alone and "possibly armed...." [T]he stated address was in a neighborhood known for illegal drug activity.

[*Id.* at 356, 532 *A.*2d 262.]

Operating on the information, the surveillance team staked out the address and, at about 9:00 p.m. that evening, observed a white male arrive alone in a maroon Ford and park in front of the suspect address. After entering the building and remaining there for approximately thirty minutes, the male returned to his vehicle and proceeded to drive away. The police followed and shortly thereafter stopped the vehicle for a traffic violation. The investigating officer testified that, while the vehicle was being brought to a stop, defendant was observed leaning forward toward the center of the car as though he was "[placing] something in that area." Concerned about the report that the defendant was armed, the officer directed defendant to exit the vehicle after which the police patted him down for safety reasons. A hunting knife was recovered from the defendant's belt area. An examination of driving credentials confirmed that the defendant's first name was David. A search of the area in the vehicle where the defendant had previously appeared to be secreting something uncovered an armband with a zippered compartment containing a quantity of methamphetamine.

Based on the totality of the circumstances, we determined that the police had probable cause to conduct the search because the investigation had sufficiently verified the informant's data. *Id.* at 359, 532 *A.*2d 262. In so ruling, however, we noted that if the hunting knife had not been recovered from the predicted area during the pat-down search, "the veracity of the informant's information" may not have been "sufficiently established to consti-

tute probable cause to conduct a search of defendant's automobile for drugs." *Id.* at 359 n. 3, 532 *A.*2d 262. We implicitly recognized then, as we expressly do now, that corroboration of the presence of a weapon as predicted lent reliability to the informant's tip because it was a fact that would not have been generally known.

Subsequent to *Probasco,* another part of this court concluded that the information received from an informant was sufficient to establish probable cause under the totality of the circumstances. *State v. Foreshaw, supra,* 245 *N.J.Super.* at 176–77, 584 *A.*2d 832. However, in reaching that conclusion, the court did not allude to the nature of the informant's details.[5] These were the facts upon which probable cause was deemed established. The police were alerted by a confidential informant that "a silver or gray El Dorado Cadillac with New Jersey license plates and a spare tire mounted on the back" had departed Camden that morning for New York City to pick up a large quantity of cocaine. *Id.* at 171, 584 *A.*2d 832. The informant advised that the vehicle would be returning to Camden at approximately 4:30 p.m. with three people, two Jamaican males and a Spanish female. Acting on this information, the police established surveillance and apprehended three individuals in a vehicle that matched the informant's description proceeding toward Camden at or about the predicted time. After stopping the vehicle and removing the occupants, the officers conducted a search of the vehicle and discovered a bag containing 502 grams of cocaine. This court concluded the police officers had probable cause to believe that contraband was present in the defendant's vehicle based on "the strength of the informant's data and their own follow-up investigation." *Id.* at 178, 584 *A.*2d 832. In addition, the court noted that the inherent mobility of the vehicle contributed to already existing "exigent circumstances" and justified the stop and search of the car. *Ibid.*

---

[5] We do not know whether the *Foreshaw* court was presented on appeal with the question of whether seemingly innocent activities, although corroborated by police observation, are sufficient to justify a warrantless search under the Fourth Amendment.

Recently, another part of this court held that the police had sufficient facts to corroborate information provided by a confidential informant that illegal drug activity was occurring despite a dissenting objection that the details were too innocuous to justify a finding of probable cause. *State v. Paturzzio,* 292 *N.J.Super.* 542, 548, 679 *A.*2d 199 (App.Div.1996). In *Paturzzio,* a confidential informant had advised the police that defendant was in a particular house, identified the owner of the house, and stated that the defendant would be leaving the residence shortly in a vehicle operated by another individual whose identity was provided. The informant also advised the police that the defendant possessed large quantities of phencyclidine (PCP) and marijuana and described a black knapsack defendant would be carrying. The record further reflects that the police were familiar with the vehicle and the operator of the vehicle described by the informant.

Based on the foregoing, the police stopped the vehicle, searched defendant, and discovered a suspected marijuana roach in a pack of cigarettes contained in the black knapsack. Later, during processing at the police station, a satchel was removed from underneath the defendant's sweatshirt in which twenty-two envelopes containing PCP were discovered. Twenty-one bags of marijuana and two "chunks" of hashish were also found in the satchel.

The majority concluded that the police surveillance sufficiently verified the information provided by the informant, thus confirming the informant's "veracity" and "basis of knowledge." *Id.* at 549, 679 *A.*2d 199 (citations omitted). Dissenting, Judge Long disagreed, stating that "a fair reading of [*Illinois v.*] *Gates* requires the conclusion that more than corroboration of innocuous details of wholly unsuspicious circumstances is necessary to bolster the veracity of an untested informant." *Id.* at 553, 679 *A.*2d 199 (Long, P.J.A.D., dissenting) (citing Wayne R. LaFave, *Search and Seizure,* § 3.3(3) at 161–62 (pocket part) (2d ed.1987)). Judge Long explained "[t]he reason for this is that a casual observer or a mere rumormonger may be able to provide a wide range of details relating to easily obtainable facts and conditions existing at the

time of the tip without knowing anything of substance about a suspect's criminal activities." *Ibid.* (citing *Illinois v. Gates, supra,* 462 *U.S.* at 245, 103 *S.Ct.* at 2335, 76 *L. Ed.*2d at 552; *Spinelli v. United States,* 393 *U.S.* 410, 416, 89 *S.Ct.* 584, 589, 21 *L.Ed.*2d 637, 644 (1969)).

As *Illinois v. Gates* itself recognizes, the relevant inquiry in determining the existence of probable cause is not "whether particular conduct is 'innocent' or 'guilty' but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates, supra,* 462 *U.S.* at 243–44 n. 13, 103 *S.Ct.* at 2335 n. 13, 76 *L.Ed.*2d at 552 n. 13. Additionally, even "[i]f the details are not suspicious, they can still pass muster as indicative of reliability if they are of intimate, hard-to-know aspects of the subject's private life." *Paturzzio, supra,* 292 *N.J.Super.* at 553, 679 *A.*2d 199 (Long, P.J.A.D., dissenting) (citing *Illinois v. Gates, supra,* 462 *U.S.* at 245, 103 *S.Ct.* at 2335, 76 *L.Ed.*2d at 552–53).

In the present case, the informant's tip consisted of the following details: the identity of the driver, a description of the car and its license plate number, an allegation that defendant and some other unidentified person (referred to collectively by the informant as "they") had just left for New York where defendant would purchase marijuana, and that the vehicle would return on Route 23 North.

Applying the principles enunciated in *Illinois v. Gates* and the dissent in *Paturzzio,* we are not satisfied that the informant's tip exhibited sufficient indicia of reliability to establish probable cause despite the police corroboration of most of the informant's details. Consequently, the searches were invalid. In so concluding, we embrace the dissent's view in *Paturzzio* that in the absence of a showing of suspicious circumstances or information consisting of "intimate, hard-to-know aspects of the subject's private life," 292 *N.J.Super.* at 553, 679 *A.*2d 199, such as the corroborated fact in *Probasco* that the defendant would be armed, no basis exists upon which we can conclude that the informant here had probable access to reliable information to justify a finding of probable

cause. The corroborated act of driving to New York from nearby Wayne and back over a short period of time along a designated route lacks "the degree of suspicion" and is not the ty,µe of "intimate hard-to-know facts" compelling a conclusion of reliability. *Ibid.* As the dissent in *Paturzzio* observed,

[t]he [Constitution] simply does not allow an untested tipster to give information to the police and thus subject innocent citizens to searches merely by providing the kind of detail the local mailman could offer about the comings and goings of most of the people on his route.

[*Id.* at 554, 679 *A.*2d 199 (Long, P.J.A.D., dissenting).]

*Accord State v. Smith, supra,* 291 *N.J.Super.* at 257, 677 *A.*2d 250 (observing that "informant set forth details which in all likelihood only one conversant with the criminal activity would know ... [which] ... was far more reliable than a mere rumor uttered by one of the criminal milieu.").

Our Supreme Court has long acknowledged "the narrow line that must be drawn to protect a citizen's privacy and freedom of movement and yet allow proper law-enforcement activities." *State v. Davis,* 104 *N.J.* 490, 504–05, 517 *A.*2d 859 (1986). Indeed, "strong safeguards against governmental interference with a citizen's rights of privacy and freedom" have always been favored by the Court. *Id.* at 504, 517 *A.*2d 859. We recognize there is no hard and fast rule that can be applied in every case to determine whether the totality of the circumstances justify a finding of informant reliability. However, it is clear that the corroborated details relied upon by the police to justify the search of defendant and his vehicle in this case were insufficient to establish probable cause.

In the years since deciding *Illinois v. Gates,* the United States Supreme Court has addressed the question of whether an anonymous tip containing generally innocuous details, although corroborated by independent police work, was sufficient to furnish "reasonable suspicion" justifying a *Terry* [6] investigatory stop. *See Alabama v. White,* 496 *U.S.* 325, 332, 110 *S.Ct.* 2412, 2417, 110

---

[6] *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968).

*L.Ed.*2d 301, 310 (1990). In that case, an anonymous informant advised police that a specifically identified woman would leave a certain apartment building at a particular time and travel to a named motel in a brown Plymouth station wagon. The informant also indicated that the woman would be carrying a brown attache case containing an ounce of cocaine. Shortly thereafter, a surveillance team observed a woman leave the described building, get into a brown Plymouth station wagon and drive toward the named motel. The police proceeded to stop the vehicle, claiming they had a reasonable suspicion to detain the defendant under *Terry v. Ohio* based on the informant's tip. A consent search was conducted and marijuana was discovered in the brown attache case. Later, during processing at the police station, the police also discovered three milligrams of cocaine in the woman's purse.

The United States Supreme Court concluded that these facts presented "a close case" as to whether "reasonable suspicion" existed to permit a *Terry* stop, in light of the innocuous nature of the details provided by the informant. *Ibid.* We infer from that holding that probable cause would not have been established on such innocuous facts. Indeed, other courts have so concluded. *See United States v. Campbell,* 920 *F.*2d 793, 797 (11th Cir.1991) (in the absence of corroborated information detailing suspicious or criminal activity, "the most that the ... police had was a reasonable suspicion of illegal activity."); *see also United States v. Gonzalez,* 969 *F.*2d 999, 1003 (11th Cir.1992) (although police observation of defendants' otherwise innocent behavior corroborated informants' tips, such information alone was insufficient to constitute probable cause because degree of suspicion was inadequate); *United States v. Solomon,* 728 *F.Supp.* 1544, 1547 (S.D.Fla.1990) (mere corroboration of innocent details in tip inadequate to demonstrate probable cause where such details were not, of themselves, suspicious).

Accordingly, we conclude the corroborated informant's tip was insufficient to establish probable cause for the search of defendant and his automobile under the Fourth Amendment and therefore

the evidence should have been suppressed.  The order denying the motion to suppress is reversed, and the matter is remanded to the Law Division.