713 A.2d 1043

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JOSEPH R. ZUTIC, DEFENDANT–RESPONDENT.

Argued January 5, 1998—Decided July 16, 1998.

104

*Gary Schlyen,* Chief Assistant Prosecutor, argued the cause for appellant (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Matthew T. Priore,* argued the cause for respondent (*Baldi & Marotta,* attorneys; *Mr. Priore* and *Anthony F. LaVista,* of counsel and on the brief).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

HANDLER, J.

In this search and seizure case, defendant was convicted of drug offenses based on evidence that had been seized following a

warrantless search of his person after his automobile was stopped and searched by the police. As in *State v. Smith,* 155 *N.J.* 83, 713 *A.*2d 1033 (1998), also decided today, the police action was based on an informant's tip. The issue presented by this appeal is whether the police, acting on a confidential informant's tip that was partially corroborated, had probable cause to justify the personal search of defendant.

## I

At approximately 6:15 p.m. on July 26, 1993, Sergeant Michael O'Connor of the Narcotics Bureau of the Wayne Police Department set up a surveillance along Route 23 North "based on information we received from a confidential reliable informer that a vehicle bearing registration BC–584V, it was a '93 red Toyota, would be traveling up 23 North from New York City after the party had purchased marijuana." With regard to the timing of the trip, O'Connor testified, "[h]e said they were—they had just left, and that was the time we received the information. So, it was short—shortly before 6 o'clock." O'Connor never indicated why he believed the informant was reliable.

At approximately 8 p.m., O'Connor saw a car matching the informant's description traveling in the center lane on Route 23 North. He said that in his experience, the round trip to New York to buy drugs took anywhere from forty minutes to an hour and a half or two hours. Upon seeing the vehicle, O'Connor pulled behind it in the unmarked van he was driving. O'Connor was traveling two or three car lengths behind the Toyota when the driver "shot off without signaling from the center lane to the right lane and got off at the Exxon station." There was a car in the right lane approximately one to two car lengths behind O'Connor's van. Traveling 40–50 m.p.h., O'Connor followed the Toyota into the right lane. He said that he did not know what happened to the car behind him in the right lane, but "it was very close."

The driver, later identified as defendant, Joseph Zutic, pulled up front-first to the side of the building at the Exxon station, and

O'Connor pulled up behind him. O'Connor identified the reason for the stop as defendant's unsafe lane change. According to O'Connor, defendant had just returned to the car when he confronted him. Upon request, defendant showed O'Connor his credentials, and O'Connor started asking him questions based upon the tip he had received. Defendant appeared "very nervous and jittery." Defendant told O'Connor that he was coming from Mountain View and that he had filled up his tank that morning, but O'Connor believed that the gas gauge was too low for defendant to have traveled such a short distance. O'Connor felt that defendant's incorrect answers substantiated the tip he had received. O'Connor read defendant his *Miranda* rights and asked him if he had any drugs in the car. Defendant denied having drugs in the car, but "he still became very nervous." O'Connor testified that, at that point, "I ordered him out of the car and he stood by the front portion of—on the driver's side. While I began looking through the car I found a Marlboro Light box containing marijuana roaches in it."

While searching the car, O'Connor observed defendant motion toward the front portion of his sweat pants. Based on his experience, O'Connor knew that people often carry drugs in their pants. Defendant denied that he was carrying drugs. According to O'Connor, "I could still see there was some kind of bulge in the front portion of his pants. And as I attempted to check it he knocked my hand—my hand away with his left hand." With the help of two uniformed officers that O'Connor had called as backup, O'Connor recovered from defendant's pants a bag containing what looked like marijuana. Lab tests later positively identified the substance as marijuana.

At that point, O'Connor told defendant he was under arrest. Defendant struggled with the officers as they tried to handcuff him, but the officers were able to subdue him and transport him to police headquarters. After O'Connor read him his *Miranda* rights back at headquarters, defendant admitted that he had

bought the marijuana in New York City and said that he had overreacted when being arrested.

On July 26, 1993, defendant was charged in Wayne Municipal Court with possession of a controlled dangerous substance (CDS), marijuana, contrary to *N.J.S.A.* 2C:35–10a(4); possession of drug paraphernalia, contrary to *N.J.S.A.* 2C:36–2; resisting arrest, contrary to *N.J.S.A.* 2C:29–2a; possession of a CDS in a motor vehicle, contrary to *N.J.S.A.* 39:4–49.1; and making an unsafe lane change, contrary to *N.J.S.A.* 39:4–88b.

On November 17, 1994, the Municipal Court held a hearing on defendant's motion to suppress the evidence. O'Connor testified in accordance with the facts as recounted, and the court denied defendant's motion. The court found that O'Connor was justified in stopping defendant based on the traffic violation. The court further found that the subsequent warrantless search was justified, in part, because "some of the contraband was found in plain view on the front seat."

A trial immediately followed the denial of defendant's motion. O'Connor's motion testimony was incorporated into the trial. Defendant provided a different account of the events. Defendant testified that O'Connor, who was in plain clothes, did not immediately identify himself as a police officer. He said that O'Connor pushed him against the car and told him he was under arrest. When defendant asked what for, O'Connor said, "I will let you know when I find what I am looking for." Defendant testified that he told O'Connor he could not search the car, but O'Connor searched it anyway. Then, O'Connor searched his pants and pulled out the marijuana. Defendant denied having gone to New York to purchase the marijuana, and he denied having marijuana in the car.

The Municipal Court found defendant guilty of possession of a CDS, resisting arrest, possession of a CDS in a motor vehicle, and making an unsafe lane change. The court acquitted defendant of possession of drug paraphernalia. At sentencing, the court merged the possession counts. The court imposed total fines and

costs of $1002 and suspended defendant's driver's license for one year.

Defendant appealed to the Law Division pursuant to *Rule* 3:23. Exercising *de novo* review, the court affirmed the Municipal Court's denial of the motion to suppress. Without expressly stating that the marijuana in the car was not in plain view, the court observed that the testimony was that the marijuana was inside a cigarette box in the front seat. Rather than uphold the search based on the plain view doctrine, the court reasoned that the informant's tip coupled with the sighting of the vehicle described in the tip was sufficient to establish probable cause to stop and search defendant's vehicle. Thus, the court affirmed defendant's convictions and sentence.

Defendant appealed to the Appellate Division, and in a published opinion the Appellate Division reversed the denial of defendant's motion to suppress. 294 *N.J.Super.* 367, 683 *A*.2d 575 (1996). The Appellate Division concluded that "the corroborated informant's tip was insufficient to establish probable cause for the search of defendant and his automobile under the Fourth Amendment." *Id.* at 378, 683 *A*.2d 575. The court expressly observed that the marijuana in the cigarette box was not in plain view and the search was not a search for weapons. *Id.* at 371, n. 4, 683 *A*.2d 575. Thus, to justify the search, O'Connor needed probable cause, which he did not have. *Id.* at 371, 683 *A*.2d 575.

We granted the State's Petition for Certification on March 19, 1997. 149 *N.J.* 35, 692 *A*.2d 48.

## II

The police may undertake a warrantless search of an automobile if they have "probable cause to believe that the vehicle contains criminally-related objects." *State v. Demeter,* 124 *N.J.* 374, 386, 590 *A*.2d 1179 (1991) (holding that observation of film canister did not create probable cause to justify search of automobile); *see also State v. Esteves,* 93 *N.J.* 498, 507, 461 *A*.2d 1128 (1983) (holding that information about possible robbery, along with

observation of what appeared to be pistol in car and occupants' failure to produce satisfactory identification, created probable cause to search vehicle); *State v. Martin,* 87 *N.J.* 561, 567–68, 436 *A.*2d 96 (1981) (holding that police had probable cause to search station wagon that matched description of vehicle used in armed robbery where vehicle was identified by several witnesses, vehicle contained glove in plain view that matched one found at crime scene and similar to glove worn by one of robbers, and occupants of vehicle fled when stopped by police).

In this case, it is clear that the search of the automobile is predicated on an informant's tip. The officer testified that the stop of the vehicle was based on an observed traffic violation and that the ensuing actions of defendant, particularly his incorrect answers, confirmed the information contained in the tip. When he searched the car, he was pursuing investigation of the tip.

■ In evaluating an informant's tip, the probable cause determination is governed by the totality of the circumstances test from *Illinois v. Gates,* 462 *U.S.* 213, 103 *S.Ct.* 2317, 76 *L. Ed.*2d 527 (1983), and *State v. Novembrino,* 105 *N.J.* 95, 519 *A.*2d 820 (1987). *See also State v. Foreshaw,* 245 *N.J.Super.* 166, 176–77, 584 *A.*2d 832 (App.Div.1991) (applying the totality of the circumstances test to determine whether information from an informant was sufficient to establish probable cause to stop and search a vehicle pursuant to the automobile exception to the warrant requirement); *State v. Probasco,* 220 *N.J.Super.* 355, 358, 532 *A.*2d 262 (App.Div. 1987) (same). We apply that test here in the same manner as we did in *Smith, supra,* 155 *N.J.* 83, 713 *A.*2d 1033.

■ We begin with a brief recapitulation of the analysis of the totality of the circumstances. Hearsay may constitute probative evidence of probable cause "so long as a substantial basis for crediting the hearsay is presented." *Novembrino, supra,* 105 *N.J.* at 111, 519 *A.*2d 820; *Smith, supra,* 155 *N.J.* at 92, 713 *A.*2d 1038. An informant's "veracity" and "basis of knowledge" are two highly relevant factors under the totality of the circumstances. *Smith, supra,* 155 *N.J.* at 93, 713 *A.*2d 1038. A deficiency in one of those

factors "may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates, supra,* 462 *U.S.* at 233, 103 *S.Ct.* at 2329, 76 *L. Ed.*2d at 545; *Smith, supra,* 155 *N.J.* at 93, 713 *A.*2d 1038. An informant's veracity may be established in a variety of ways. For example, the informant's past reliability will contribute to the informant's veracity. *Smith, supra,* 155 *N.J.* at 93, 713 *A.*2d 1038; *Novembrino, supra,* 105 *N.J.* at 123, 519 *A.*2d 820. With regard to the informant's basis of knowledge, if the informant does not identify the basis of knowledge, a reliable basis of knowledge may nonetheless be inferred from the level of detail and amount of hard-to-know information disclosed in the tip. *Smith, supra,* 155 *N.J.* at 95, 713 *A.*2d 1039. Finally, independent corroboration of hard-to-know detail in the informant's tip may also greatly bolster the tip's reliability. *Id.* at 95, 713 *A.*2d 1040.

Here, O'Connor simply asserted that the informant was "reliable" without indicating what made him think so. In the absence of information about the informant's veracity, the court cannot make an independent evaluation of the informant's veracity. The officer's conclusory assertion that the informant was reliable was not sufficient to establish the informant's veracity.

Further, like the informant in *Smith,* the informant in this case did not indicate the basis of knowledge, so we must turn to the contents of the tip and the level of detail contained in the information to discern if there is a sufficient basis of knowledge. *Novembrino, supra,* 105 *N.J.* at 113, 519 *A.*2d 820. If the tip contains information that would be hard to know without a reliable source of information, the court may infer a reliable basis of knowledge. *Smith, supra,* 155 *N.J.* at 94, 713 *A.*2d 1039.. The informant in this case allegedly knew that "a party" not otherwise identified was making a round trip to New York from Wayne and that the party was buying drugs. The informant's knowledge of the suspect's travel plans implicitly asserts a possible reliable basis of knowledge, but even after police corroboration of those

travel plans, there is not enough to establish probable cause. Although the informant predicted defendant's future travel plans, he did not predict them with the same degree of detail as contained in *Draper v. United States,* 358 *U.S.* 307, 79 *S.Ct.* 329, 3 *L. Ed.*2d 327 (1959). In *Draper,* a known informant predicted a round trip between Denver and Chicago and provided identifying information consisting of a detailed description of the clothing the defendant would be wearing, the bag he would be carrying, and the brisk pace of his gait. *Id.* at 309, 79 *S.Ct.* at 331, 3 *L. Ed.*2d at 329–30. Compared to *Draper,* the information contained in the tip in this case was not hard to know because defendant's driving pattern could be known by others. Although the informant's knowledge of defendant's travel plans suggests some degree of familiarity with defendant's activities, it is not the same kind of intimate, hard-to-know detail that existed in *Draper. See Novembrino, supra,* 105 *N.J.* at 116–17, 519 *A.*2d 820 (observing that a tip's reliability is not bolstered by corroboration of innocent details that do not suggest a reliable basis of knowledge); *State v. Paturzzio,* 292 *N.J.Super.* 542, 553, 679 *A.*2d 199 (App.Div.1996) (same); *cf. Foreshaw, supra,* 245 *N.J.Super.* at 177, 584 *A.*2d 832 (stating corroboration of tip "down to the smallest detail," established probable cause even in absence of informant veracity). In fact, police investigation showed that the informant was wrong about a significant piece of information. The informant had alleged that "they" were going to New York to buy drugs. There was no other information serving to identify the suspects. O'Connor saw only one person in the car. The inaccuracy and vagueness of the informant's allegation significantly undermines the reliability of the informant's basis of knowledge. Inaccuracy in particular weighs heavily against the existence of probable cause. In addition, police corroboration here was of purely non-suspicious detail; without the corroboration of suspicious detail there can be no inference that defendant was engaged in criminal activity. *See Novembrino, supra,* 105 *N.J.* at 116, 519 *A.*2d 820 (noting that police corroboration of innocent details could not satisfy the veracity requirement).

 Under the totality of the circumstances test, the several circumstances, though insufficient if considered in isolation, may in combination reinforce or augment one another and become sufficient to demonstrate probable cause. *Gates, supra,* 462 *U.S.* at 233, 103 *S.Ct.* at 2329, 76 *L. Ed.*2d at 545. Here, the circumstances both singly and in combination are insufficient to establish probable cause. These are the absence of informant veracity; the absence of a reliable basis of knowledge, either directly disclosed in the tip itself or indirectly disclosed by the presentation of extensive details or unusual predictive events; the absence of corroboration that could serve to bolster or reinforce the likely existence of criminal activity; and the absence of any independent investigation of facts indicating probable criminal activity. Consequently, the totality of the circumstances surrounding the search of defendant failed to establish probable cause.

 The police corroboration under the surrounding circumstances generated only reasonable articulable suspicion to justify an investigative stop. *See Alabama v. White,* 496 *U.S.* 325, 332, 110 *S.Ct.* 2412, 2417, 110 *L. Ed.*2d 301 (1990) (finding reasonable articulable suspicion where an informant predicted that a suspect would take a particular travel path). If the police also had reasonable articulable suspicion that defendant was armed and dangerous, that, at most, could support a protective search. *See State v. Arthur,* 149 *N.J.* 1, 12, 691 *A.*2d 808 (1997). The police certainly did not have the probable cause required to subject defendant to a personal search for contraband.

### III

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.