**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0722-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TITUS L. CAVER, a/k/a
TITUS K. CAVER,

    Defendant-Appellant.

_____

Submitted December 11, 2018 – Decided April 2, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 14-01-0028.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael T. Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura C. Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the trial court denied defendant Titus L. Caver's motion to suppress evidence that police seized from him based upon a confidential informant's (CI) tip, he pled guilty to the one count of second-degree unlawful possession of a weapon (handgun), N.J.S.A. 2C:39-5(b), that an indictment charged him with having committed. The court sentenced defendant in accordance with his plea agreement to a five-year term subject to a three-and-one-half year period of parole ineligibility.

On appeal, defendant challenges the denial of his suppression motion. Specifically, he argues:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE OFFICERS DID NOT HAVE THE REQUISITE REASONABLE SUSPICION TO CONDUCT AN INVESTIGATORY STOP OF DEFENDANT. THEREFORE, THE DISCOVERY OF THE HANDGUN ON DEFENDANT'S PERSON WAS THE FRUIT OF AN UNCONSTITUTIONAL SEARCH AND MUST BE SUPPRESSED.

We are not persuaded by his argument and for the reasons that follow, we affirm.

The facts leading to defendant's arrest and the seizure of the handgun as developed at the suppression hearing are summarized as follows. Police were

A-0722-17T3

alerted to the possibility that defendant was in possession of a weapon when two members of the New Jersey State Police (NJSP) received information from two different CIs on two different dates about defendant having a gun. In June 2013, Detective Anthony Mason was assigned to the Weapons Trafficking Central Unit. He obtained information that Titus Caver "was known to be armed with a gun." The detective believed information from the CI was reliable because he had been working with the CI for "a couple of months," with "almost daily" contact. According to Mason, the CI's information had always proven reliable, and had "led to an arrest on a couple different occasions, and there [we]re . . . between five and eight arrests pending as a result of the information" learned from the CI.

On October 28, 2013, Detective Sergeant Timothy Steinmetz received information from his CI that "T-Dot" had a gun. The CI had been working with the detective for several months with approximately weekly contact and had always provided reliable information. According to Steinmetz, the CI's assistance led to "maybe three or four" arrests. Through one of his prior experiences with the CI, the detective learned that "T-Dot" referred to defendant as that was the name the CI used when identifying defendant. The CI also described defendant's clothing, location, and weapon, telling the detective that

defendant was wearing a brown jacket, walking his pit bull on Ardmore Street in Trenton, and carrying a .40 caliber weapon.

Based on the information provided by the CI, Steinmetz, Mason, and other NJSP officers went to the location described by the CI in an unmarked police vehicle. While the officers were en route, Steinmetz's CI contacted the detectives and confirmed defendant was still at the location he described earlier.

When they arrived, Steinmetz confirmed the information his CI provided when he saw defendant in the designated location "wearing a brown jacket and walking a pit bull." The officers also recognized defendant from their previous experiences.

When they arrived, the officers got out of the car and drew their weapons, but kept them at their sides, pointed downward. Upon identifying themselves as police officers, defendant immediately surrendered by raising his hands over his head and advising the officers that he had "a gun on" him. The officers seized the handgun from defendant's jacket's left pocket and arrested him.

After defendant's arrest and indictment, he filed a motion to suppress the weapon seized from him. At the October 24, 2014 suppression hearing, Mason and Steinmetz testified to the events as described above leading to defendant's arrest and the seizure of the weapon.

4

Defendant also testified at the hearing. According to defendant, on the day of his arrest, he was walking his dog when he was suddenly approached from behind by an unmarked minivan, "which turned out to be the state police." He stated that, "the passenger of the minivan was armed with an assault rifle." Defendant also testified that the officers "jumped out with their weapons drawn" and pointed at him while "screaming" that he should keep his hands visible to them.

Defendant denied owning the weapon found in his pocket. He stated that he did not know where he got it from, and acknowledged that he did not have a license to carry the weapon. Defendant testified that particular day was the "first time bringing th[e] gun out," and that he had only had it "for a little bit . . . probably about . . . a week or two." However, he acknowledged that someone may have seen him out on the streets in June.

On October 30, 2014, the trial court entered an order denying defendant's suppression motion, stating its reasons in a written decision issued on the same date. The court found all three witnesses credible. It made factual findings substantially consistent with the State's description of the events leading to the seizure of the weapon.

A-0722-17T3

Addressing defendant's legal contentions, the court turned to the issue of whether defendant was lawfully stopped by the officers. Citing to Terry v. Ohio, 392 U.S. 1 (1968) and State v. Thomas, 110 N.J. 673 (1988), the court stated that "[p]olice officers may only stop an individual to conduct an investigatory stop if they have an objectively reasonable and articulable suspicion that the individual stopped was or is involved in criminal activity." Once stopped, under Terry, "the seizure of any weapons taken from the suspect [may] be introduced as evidence."

Citing to United States v. Cortez, 449 U.S. 411, 417 (1981) and State v. Davis, 104 N.J. 490, 502 (1986), the trial court observed that whether police have the requisite articulable and reasonable suspicion when they make a stop must be determined from the totality of the circumstances and it was the State's burden "to show that the particular facts provided a reasonable suspicion for the officer to conduct a Terry stop."

The trial court then reviewed the law applicable to an officer's reliance upon information from a CI in forming a reasonable suspicion of criminal activity by a defendant before effectuating a Terry stop. Comparing the CI's information in this case to that which was provided in State v. Birkenmeier, 185 N.J. 552 (2006) and State v. Branch, 301 N.J. Super. 307 (App. Div. 1997), rev'd

6

in part on other grounds, 155 N.J. 317 (1998), the trial court concluded that the level of detail provided by the CI, the officer's history of relying upon information provided by the CI, and the officers' corroboration of the information when they found defendant, permitted the officers to formulate a reasonable articulable suspicion that defendant possessed a weapon. The court stated that in light of the officers' successful reliance upon the CI in the past and the fact that "[t]he level of detail provided [about defendant] indicated the confidential source possessed firsthand knowledge of the information[, including his] name, location, type of handgun, and details regarding clothing," "[u]nder the totality of the circumstances, [the police] had a reasonable suspicion to stop the defendant," place him under arrest and seize the gun from him.

Two years later, defendant filed a motion for reconsideration of the denial of his suppression motion. On August 31, 2016, the trial court denied that motion, setting forth its reasons in another written decision issued on the same date. In denying the motion, the trial court rejected defendant's contention that his prior counsel failed to argue, and therefore the court failed to consider, whether defendant's stop by police was not a Terry stop but rather a de facto arrest, which warranted probable cause to arrest. According to the court, "before

A-0722-17T3

any detention occurred, the defendant raised his hands in the air and admitted there was a handgun in his jacket pocket."

After the denial of his reconsideration motion, defendant pled guilty to the indictment's one charge, pursuant to a plea agreement in which he preserved his right to challenge the denial of his suppression motion, and the State agreed to recommend a sentence of five years with a three-and-one-half year period of parole ineligibility. On June 30, 2017, the trial court sentenced defendant in accordance with his plea agreement. This appeal followed.

On appeal, defendant only challenges the trial court's determination that the police had "the requisite reasonable suspicion to conduct an investigatory stop of defendant." According to defendant, "[t]he narrow legal issue is whether the informant's tip[s] provided reasonable articulable suspicion for the stop." Defendant contends that the informant's tips "did not provide" a sufficient legal basis to stop him because "the informant[] . . . failed to convey a basis of knowledge, . . . merely allow[ing] the police to identify the person the informant wanted to implicate[.]" We disagree.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings

are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15).  "Those findings warrant particular deference when they are 'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Ibid. (alteration in original).  We review de novo the judge's pure determinations of law, State v. Mann, 203 N.J. 328, 337 (2010), as well as the application of legal principles to factual findings. State v. Harris, 181 N.J. 391, 416 (2004).

We conclude that the trial court correctly determined that the officers possessed the requisite reasonable articulable suspicion to stop defendant.  We affirm therefore substantially for the reasons stated by the trial court in its comprehensive written decision.  We add only the following comments.

Courts analyze the reliability of a CI's tip under a "totality of the circumstances test."  State v. Smith, 155 N.J. 83, 92 (1998).  "An informant's 'veracity' and 'basis of knowledge' are two highly relevant factors under the totality of the circumstances."  State v. Zutic, 155 N.J. 103, 110 (1998) (citing Smith, 155 N.J. at 93).  Neither factor, in and of itself, is indispensable to a finding of reliability.  "A deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the

other, or by some other indicia of reliability.'" Id. at 110-11 (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

An informant's veracity can be supported by his or her past reliability. Id. at 111. "[I]f the informant does not identify the basis of knowledge, a reliable basis of knowledge may nonetheless be inferred from the level of detail and amount of hard-to-know information disclosed in the tip." Ibid. (citing Smith, 155 N.J. at 95). "[T]he nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source." Smith, 155 N.J. at 94; accord, State v. Novembrino, 105 N.J. 95, 113 (1987) (quoting Spinelli v. United States, 393 U.S. 410 (1969)). An informant's knowledge can also be inferred from the informant's prediction of "hard-to-know future events." Smith, 155 N.J. at 95.

In the case before us, the officers' reasonable suspicion was based upon information provided by a reliable informant who gave detailed descriptions of defendant, his dog, his clothing, and the weapon, which officers corroborated immediately when they arrived at the location the informant had described. The informant's proven record of reliability and the accuracy of the information provided, as well as the detectives' prior experience with defendant, combined to establish a reasonable suspicion to justify a Terry stop. Once properly

10

stopped and being told by defendant about his possession of the weapon, the seizure of the gun was permissible. <u>See</u> <u>Zutic</u>, 155 N.J. at 113 ("If the police also had reasonable articulable suspicion that defendant was armed and dangerous, that . . . could support a protective search" (citing <u>State v. Arthur</u>, 149 N.J. 1, 12 (1997))). We find no reason to disturb either the trial court's findings or its legal conclusions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0722-17T3