**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4455-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RONALD R. WALKER, a/k/a
RONALD R. WALKER, 2nd,
and RONALD R. WALKER, JR.,

    Defendant-Appellant.

_____

Submitted December 9, 2019 – Decided April 21, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-06-1203.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel and on the brief).

PER CURIAM

Following his guilty plea, defendant Ronald R. Walker appeals his conviction for second-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(2). On this appeal as of right, R. 3:5-7(d), he advances a single argument:

> THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE A) THE TIP FROM THE CONFIDENTIAL INFORMANT THAT PROMPTED THE STOP WAS NOT RELIABLE AND CONSISTED ALMOST ENTIRELY OF INNOCENT IDENTIFYING DETAILS AND B) BECAUSE POLICE FAILED TO CORROBORATE THAT [DEFENDANT] WAS ENGAGED IN CRIMINAL ACTIVITY BEFORE STOPPING HIM.

Because the stop was justified under the totality of the circumstances, we affirm.

The trial court heard testimony at an evidentiary hearing from a detective who received information from a confidential informant (CI) and thereafter surveilled defendant. The court found the "information that defendant was engaged in CDS activity from a reliable informant who was involved in a prior CDS investigation with [the detective's unit,]" the detective's familiarity "with defendant from previous CDS investigations involving defendant[,]" and the detective's knowledge of the area in which he surveilled defendant—Manitou Park—as "a high crime area," justified the detective's stop of defendant as he sat in a parked car. The court also found the detective's stop placed him "lawfully

in the viewing area" when, after opening the car door, he saw a vegetative matter in plain view, justifying defendant's arrest. In the search incident thereto, police found 770 wax folds of heroin, five grams of crack cocaine, oxycodone pills and $6525 on defendant's person.

We give deference to findings "which are substantially influenced by [the trial court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007). "An appellate court should not disturb the trial court's findings merely because 'it [may] have reached a different conclusion were it the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of one side' in a close case." Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Only in those circumstances where the trial court's findings are so clearly mistaken "that the interests of justice demand intervention and correction" will we "appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions." Ibid. (quoting Johnson, 42 N.J. at 162). The trial court's application of its factual findings to the law, however, is subject to plenary review. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

"[U]nder both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, [government] . . . seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." Elders, 192 N.J. at 246. "[T]he State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure 'falls within one of the few well-delineated exceptions to the warrant requirement.'" Ibid. (quoting State v. Pineiro, 181 N.J. 13, 19-20 (2004)).

"Not all interactions between law enforcement [officers] and citizens constitute seizures, and not all seizures are unconstitutional." Ibid. An investigatory stop, otherwise known as a Terry stop, Terry v. Ohio, 392 U.S. 1 (1968), "is valid if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity," State v. Mann, 203 N.J. 328, 338 (2010) (quoting Pineiro, 181 N.J. at 20).

Analysis of the validity of an investigatory stop balances the competing interests between "a citizen's privacy and freedom of movement" and "proper law[]enforcement activities." State v. Davis, 104 N.J. 490, 504-05 (1986). Investigative stops are justified, even absent probable cause, "if the evidence,

when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." Id. at 505. Courts are to determine whether the totality of the circumstances gives rise to an "articulable [and] particularized" suspicion of criminal activity, not by use of a strict formula, but "through a sensitive appraisal of the circumstances in each case." Ibid. Our Supreme Court recognized the two-step analysis set forth in United States v. Cortez, 449 U.S. 411, 418 (1981),

> for determining whether the totality of circumstances creates a "particularized suspicion." A court must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." "[A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a court must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [Davis, 104 N.J. at 501 (alterations in original) (citations omitted) (quoting Cortez, 449 U.S. at 418).]

Here, several circumstances gave rise to a particularized, reasonable suspicion that defendant was engaged in criminal activity.

As the trial court found, the CI informed the detective, a member of the Ocean County Prosecutor's Office special operations group (SOG), that defendant—whom he identified by name and as "Boobie"—was in the area of Manitou Park, traveling in a black Jeep Grand Cherokee. The CI also informed that defendant was in possession of heroin and crack cocaine which he was selling to individuals. The detective knew defendant used "Boobie" as a street name, and was familiar with him from prior CDS investigations. The court found the CI was reliable based on his involvement in a prior SOG investigation involving CDS. We note the detective testified that the CI provided "information and cooperation" that "resulted in the arrest of an individual for CDS[-]related charges."

We agree with defendant that the CI's tip, standing alone, did not give rise to a reasonable and articulable suspicion justifying the stop of defendant. In the context of establishing probable cause, the totality of the circumstances under which a CI's tip must be analyzed includes the CI's "veracity" and "basis of knowledge." State v. Smith, 155 N.J. 83, 92-93 (1998). We are unconvinced that the single instance of undetailed "information and cooperation" previously provided by the CI established his veracity. See State v. Zutic, 155 N.J. 103, 111 (1998). Further, the basis for the CI's knowledge was not provided, nor

does the CI's general information—which does not describe the criminal activity or establish "hard-to-know <u>future</u> events," provide that basis. <u>Smith</u>, 155 N.J. at 95. But the totality of the circumstances included much more that the CI's information.

The trial court's findings from the detective's credited testimony reveal that the detective traveled to the Manitou Park area and observed defendant in the Jeep described by the CI, and eventually followed defendant when he drove to the intersection of Second Avenue and Third Street; the trial court credited the detective's testimony that he knew frequent CDS transactions and CDS-related arrests took place in that area. After the detective radioed for assistance from his SOG unit, he surveilled defendant exit the Jeep, speak with several individuals, return to the Jeep to retrieve an item through the driver's side door, and speak on several occasions on his cell phone. When a gray Dodge Charger arrived, the driver, Gregory Stone, exited the Charger, spoke to defendant and removed something from the Jeep. Thereafter, Patrick Howard came on the scene, and all three men were seen in the Charger engaging in what the detective believed, based on his training and experience, to be a drug transaction. That corroboration in tandem with the detective's trained deduction that defendant engaged in a drug sale, comprised a part of the totality of circumstances that

must be considered in determining whether the stop was valid. Id. at 98 (holding, in the context of a probable cause analysis, "[e]ven where the tip lacks sufficient detail to establish a basis of knowledge, independent police investigation and corroboration of the detail in the tip must be considered because it may in some circumstances add to the evidentiary weight of factors as well as the overall circumstances").

Additional circumstances gave rise to a reasonable, particularized suspicion that defendant engaged in criminal activity. As the detective approached the Charger, he observed that defendant and Howard were focused on another police vehicle as it approached. In testimony credited by the trial court, the detective said he then observed defendant "moving around in his waistband, in his lap, attempting to what [the detective] believe[d] to be either conceal[ing] or tuck[ing] away something under the seat in that area, the driver's seat area." Based on the gang activity, violence and gun use in that area, the detective believed defendant was trying to conceal "gun[s], drugs, whatever" as he walked to the car. The detective testified the other SOG members were still approaching in their vehicles; the detective "was there by [him]self with the three subjects in the Charger." He, therefore, grabbed the driver's door handle and opened the door. As the trial court found, "[a]fter opening the door, [the

detective] identified himself as a police officer and requested defendant to step out of the vehicle."

We first observe our Supreme Court's recognition that "[n]ervousness and furtive gestures may, in conjunction with other objective facts, justify a Terry search, but ordinarily '[m]ere furtive gestures of an occupant of an automobile do not give rise to an articulable suspicion suggesting criminal activity.'" State v. Carty, 170 N.J. 632, 648 (2002) (second alteration in original) (quoting State v. Lund, 119 N.J. 35, 47 (1990)), modified on other grounds, 174 N.J. 351 (2002). But as the Court in Lund observed: "Obviously there are some cases in which 'furtive' movements or gestures by a motorist, accompanied by other circumstances, will ripen into a reasonable suspicion that the person may be armed and dangerous or probable cause to believe that the person possesses criminal contraband." 119 N.J. at 48.

In addition to the observed furtive movements, the information provided by the CI, and the observations by the SOG detective, buttressed by his training, experience and knowledge of both defendant and the area in which the observations took place, provided a reasonable, particularized suspicion that defendant engaged in illegal drug activity, justifying his stop. The stop was a proper investigative measure. As we explained in State v. Williams:

Precedent establishes that "[b]ased [on the] whole picture[,] the detaining officers must have a particularized and objective basis for suspecting <u>the particular person stopped</u> of criminal activity." <u>Cortez</u>, 449 U.S. at 417-18 (emphasis added). In this context, we recognize that the level of proof required to justify an investigative stop is less than that required to demonstrate probable cause. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." [<u>Adams v. Williams</u>, 407 U.S. 143, 145 (1972).]

[364 N.J. Super. 23, 36 (App. Div. 2003) (first alteration in original) (citations omitted).]

Defendant contests only the stop, not any further action the detective took prior to the seizure of the items found in the car and on defendant's person. We briefly address those issues for the sake of completeness.

Opening a car door is analyzed under the same test utilized in determining police authority to order a passenger from a motor vehicle. As to both police actions, our Supreme Court has held:

We see no reason to depart from the elegant reasoning that undergirds this settled principle in making the parallel determination of whether a police officer has the authority to open a vehicle door as part of issuing an order to exit the vehicle. In the realm of defining reasonable searches and seizures, no meaningful or relevant difference exists between the grant of authority to order an occupant of a vehicle to exit the vehicle and the authority to open the door as part of issuing that

10

lawful order. Plain logic demands that the principles that govern whether a passenger of a vehicle lawfully can be ordered out of the vehicle must apply with equal force to whether a police officer is entitled, as a corollary and reasonable safety measure, to open the door as part of issuing a proper order to exit. See State v. Matthews, 330 N.J. Super. 1, 6 (App. Div. 2000) (holding that "[s]ince the officer was entitled to order defendant out of the car, he was equally entitled to open the door to accomplish that object").

[State v. Mai, 202 N.J. 12, 22-23 (2010) (alteration in original).]

To justify an order to a passenger to step out of a vehicle,

the officer need not point to specific facts that the occupants are "armed and dangerous." Rather, the officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.

[State v. Smith, 134 N.J. 599, 618 (1994).]

Under the totality of the circumstances as we have recited, the detective was justified in opening the car door for his protection and control of the scene. In Mai, the Court "reaffirmed that 'a police officer could order a passenger out of an automobile if the officer had an articulable suspicion short of probable cause to believe that a crime had been committed.'" 202 N.J. at 25 (quoting State v. Tucker, 136 N.J. 158, 167 (1994)). Inasmuch as ordering a driver out

11

of a vehicle requires even less cause, see Smith, 134 N.J. at 609-11 (adopting the Fourth Amendment analysis set forth in Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), and holding the safety of police officers during traffic stops far outweighs the de minimis intrusion on a driver who is asked to alight from a vehicle even if no suspicious behavior was detected prior to the request), the detective's order to defendant to step out of the vehicle was proper.

For the reasons set forth in the trial court's oral opinion, the plain view seizure of the substance believed to be marijuana, subsequent arrest of defendant and search incident thereto—unchallenged by defendant—were proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4455-17T1