**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5939-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMEER A. HOLT,

    Defendant-Appellant.

_____

Submitted April 28, 2020 – Decided May 29, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 16-10-2064.

Joseph E. Krakora, Public Defender, attorney for appellant (Cody T. Mason, Assistant Deputy Public Defender, of counsel and on the briefs).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Shiraz Deen, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant pled guilty to second-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 35-5(b)(2), and other charges. Defendant appeals from the judgment of conviction dated August 10, 2018. He contends the trial court erred by denying his motion to suppress and resentencing is required. We affirm.

I.

In October 2016, an Ocean County Grand Jury returned Indictment No. 16-10-2064, charging defendant with third-degree possession of a CDS (Oxycodone), N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of a CDS (cocaine), N.J.S.A. 2C:35-10(a)(1) (count two); second-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 35-5(b)(2) (count three); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count four); second-degree possession of a firearm while engaging in drug activity, N.J.S.A. 2C:39-4.1(a) (count five); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (count six). Thereafter, defendant filed a motion to suppress evidence and a judge conducted an evidentiary hearing on the motion.

At the hearing, Officer Theodore Maloney, of the Toms River Police Department (TRPD), testified that on September 21, 2016, he was working at

police headquarters when a detective informed him that an anonymous person had reported that an individual named "Ameer Holt" was distributing narcotics out of a room at a certain motel in Toms River. The anonymous person also reported that defendant was driving a red Mazda that might be registered to a car dealership.

Maloney and other TRPD officers obtained photographs of defendant's driver's license and established surveillance at the motel. Maloney said that on three separate occasions, he witnessed defendant walking down the motel's staircase towards a silver Buick LeSabre. He said defendant entered the vehicle and "fumble[d] around with some things," before he met another person in the parking lot.

According to Maloney, defendant and the other individual engaged in a "brief conversation" and "appeared to exchange items[,]" before going their separate ways. Maloney testified that, based on his training and experience, he believed defendant's activity was consistent with the distribution of narcotics.

Maloney further testified that later, defendant entered the vehicle and drove to another location. Maloney said that, at that location, he observed defendant engage in what he "believed to be a drug deal" in his vehicle. Police officers then stopped defendant. He consented to a search of the vehicle and,

according to Maloney, he was "more than" cooperative. The police did not find drugs, firearms, or any other incriminating evidence in the car.

The following day, Jeanine Reiser contacted Maloney. Reiser told Maloney she was defendant's fiancée or girlfriend and that she saw the police stop defendant the previous day. She said she was upset that defendant was "involved in narcotic activity" and noted that she had reported the Buick stolen after defendant failed to return the car to her.

Reiser told Maloney that defendant was staying at the motel. He was using the Buick as a "stash location" for drugs and had a handgun. Reiser informed Maloney defendant had picked up drugs from an associate in Newark, and he was driving to the motel in a red Mazda.

The police officers again conducted surveillance of the motel. They observed a red Mazda enter the motel's parking lot. Defendant was in the passenger seat and an unknown person was driving the vehicle. The officers were not wearing their police uniforms, but they were wearing tactical vests with their badges displayed. The officers approached the Mazda with their guns drawn and removed defendant from the vehicle.

Officer Andrew Chencharik of the TRPD patted defendant down for possible weapons. He testified that he felt "a soft object[ or] small plastic bag"

A-5939-17T4

in defendant's pocket, which he "believed" was "consistent with the packaging" of "some type of contraband CDS." According to Chencharik, defendant said the "bulge" in his pocket "was marijuana and pills."

Chencharik arrested defendant and placed him in the back of a patrol car. From defendant's person, the officers recovered ten Oxycodone pills, which were "[b]undled up along with a quantity of a marijuana . . . ." The driver of the red Mazda consented to a search of the vehicle. The officers searched the vehicle but found no additional evidence. They released the driver of the Mazda and he left the area.

The officers then asked a K-9 team to report to the motel parking lot and have the dog check the Buick for narcotics. The team brought the dog to the motel. The dog examined the exterior of the car and gave two positive alerts indicating the presence of narcotics at the front side door on the passenger side and the rear door on the driver's side. The officers impounded the car and had the car brought to police headquarters.

Maloney confirmed that Reiser reported that the Buick had been stolen. He called Reiser and told her that he would either seek a warrant to search the vehicle or she could come to police headquarters and complete a consent-to-search form. Reiser went to police headquarters. Maloney explained the

5

consent-to-search form to her. He told her she could be present for the search and she could stop the search at any time. Maloney gave her time to read the form. She did not ask any questions or indicate she did not understand the form. She signed the form.

The officers searched the vehicle and found about seventeen grams of cocaine in the driver's side door, two digital scales with CDS residue, a box of plastic sandwich bags, and drug paraphernalia. After the search, defendant waived his Miranda rights[1] and gave the police a recorded statement. He admitted that the cocaine and the scales found in the car belonged to him. The police returned the vehicle to Reiser without further investigation.

On September 23, 2016, Reiser called Maloney. She stated that after she spoke with defendant in jail, she became suspicious about the contents of her car. She checked certain panels on the vehicle's doors. She observed a handgun behind a panel of the passenger-side door.

Chencharik and three other officers responded to Reiser's apartment. Chencharik advised Reiser of her rights and she consented to a second search of her car. The officers searched the vehicle and removed a gun from behind a panel on the passenger-side door.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

At the suppression hearing, Reiser testified that defendant is her boyfriend and he is the father of her two-year-old child. Reiser said she and defendant were not living together in 2016, she did not know where he was living at that time, and she had no knowledge of his alleged crimes. She denied contacting the police on September 22 and 23, 2016. She said she never provided the police with information about drugs or a firearm.

Reiser claimed she only signed the first consent-to-search form because the police had threatened to arrest her and have the Division of Child Protection and Permanency contact her. Reiser further testified that a detective called her and told her the police wanted to search the car a second time. According to Reiser, the police kept mentioning drugs and guns.

Reiser explained that the police presented her with another consent-to-search form. She said she signed the form because she did not want any trouble. She claimed she did not read either form in detail. She said the officers did not read the form to her. She testified that she did not know she could refuse to sign the form or that she could stop the search.

On January 2, 2018, the judge filed an opinion and order denying defendant's motion to suppress. Thereafter, defendant pled guilty to counts one, two, three, four, and six of the indictment. In exchange for defendant's plea, the

State agreed to recommend an aggregate sentence of twelve years of incarceration with five years of parole ineligibility. The State also agreed to dismiss count five and two disorderly persons offenses.

On August 3, 2018, another judge sentenced defendant to an aggregate sentence of twelve years of imprisonment with five years of parole ineligibility. The judge also imposed various fines and penalties. This appeal followed.

On appeal, defendant raises the following arguments:

> POINT I
> THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS EVIDENCE BECAUSE IT WRONGLY FOUND DEFENDANT WAS DETAINED RATHER THAN ARRESTED WHEN HE WAS FRISKED, CONCLUDED THAT THE FRISK WAS JUSTIFIED BASED ON A TIP OF UNPROVEN RELIABILITY, AND FOUND THE BUICK WAS LAWFULLY IMPOUNDED BASED UPON A DOG SNIFF UNSUPPORTED BY PROOF OF RELIABILITY.
>
> A. Defendant Was Arrested When Three Officers Blocked In His Car, Approached With Guns Drawn, Removed Him From The Car, And Patted Him Down.
>
> B. The Officers' Conduct Was Unjustified Because It Was Based On A Tip Of Unknown Reliability.
>
> C. The State Failed To Show That The Dog Sniff Was Reliable Such That The Impoundment And Search Of The Buick Were Illegal.

A-5939-17T4

POINT II
THE MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE COURT FAILED TO ADEQUATELY EXPLAIN ITS AGGRAVATING FACTOR FINDINGS AND DID NOT ACCOUNT FOR DEFENDANT'S REMORSE.

II.

We turn first to defendant's contention that the judge erred by denying his motion to suppress. The judge found that the officers had reasonable articulable suspicion that defendant was engaged in, or about to engage in criminal activity, and therefore lawfully detained and frisked defendant for investigation. The judge also found that Reiser knowingly and voluntarily consented to the searches of her vehicle. The judge therefore determined that the officers lawfully obtained the evidence during defendant's detention and the search of the car.

When reviewing the denial by the trial court of a motion to suppress evidence, we will defer to the court's findings of fact "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). We may disregard those findings of fact only if they are "clearly mistaken." Ibid. However, the trial court legal conclusions are not entitled to any special deference and we review those conclusions de novo. Id. at 263.

A.  Investigative Stop or Arrest.

Defendant argues that the motion judge erroneously found that the police lawfully detained him for investigation and frisked him during that encounter. Defendant contends that the officers transformed the encounter "from a minimally invasive detention to a de facto arrest."  We disagree.

"Warrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions."  State v. Pineiro, 181 N.J. 13, 19 (2004) (citing State v. Patino, 83 N.J. 1, 7 (1980)).  "[S]uch seizures or searches [must] be conducted pursuant to a warrant issued upon a showing of probable cause."  Ibid. (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). "When no warrant is sought, the State has the burden to demonstrate that '[the search] falls within one of the few well-delineated exceptions to the warrant requirements.'"  Ibid. (alteration in original) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).

Generally, there are three "constitutionally permissible forms of police encounters with citizens."  Id. at 20-21.  A "'field inquiry' is the least intrusive encounter[] and occurs when a police officer approaches an individual and asks 'if [the person] is willing to answer some questions.'"  Id. at 20 (second alteration in original) (quoting State v. Nishina, 175 N.J. 502, 510 (2003)).

Next, "more intrusive than a field inquiry is . . . an investigative detention[,]" also known as a <u>Terry</u> stop. <u>Nishina</u>, 175 N.J. at 510 (citing <u>Terry v. Ohio</u>, 392 U.S. 1 (1968)). "An encounter escalates from an inquiry to a detention 'when an objectively reasonable person feels that his or her right to move has been restricted.'" <u>Ibid.</u> (quoting <u>State v. Rodriguez</u>, 172 N.J. 117, 126 (2002)).

A <u>Terry</u> stop "is valid 'if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.'" <u>Pineiro</u>, 181 N.J. at 20 (quoting <u>Nishina</u>, 175 N.J. at 510-11). The police must "ha[ve] a 'particularized suspicion' based upon an objective observation that the person stopped has been [engaged] or is about to engage in criminal wrongdoing . . . based upon the . . . officer's assessment of the totality of circumstances with which he is faced." <u>State v. Davis</u>, 104 N.J. 490, 504 (1986).

Furthermore, "[t]he standard of reasonable suspicion required to uphold an investigative detention is lower than the standard of probable cause necessary to justify an arrest." <u>Nishina</u>, 175 N.J. at 511 (citing <u>State v. Stovall</u>, 170 N.J. 346, 356 (2002)). Application of the reasonable suspicion standard is "highly fact sensitive and, therefore, not 'readily, or even usefully, reduced to a neat set

11

of legal rules.'" Ibid. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

"[A]n investigatory stop becomes a de facto arrest when 'the officers' conduct is more intrusive than necessary for an investigatory stop.'" State v. Dickey, 152 N.J. 468, 478 (1998) (quoting United States v. Jones, 759 F.2d 633, 636 (8th Cir. 1984)). There is no "bright line" for determining when an investigatory stop constitutes a de facto arrest. Id. at 479. In making that decision, the court should consider several factors including: the length of the detention; degree of fear and humiliation endured by the defendant; transportation or isolation of the defendant; and whether the defendant was handcuffed or confined to a police car. Ibid.

Here, there is sufficient credible evidence in the record to support the judge's finding that defendant was subjected to an investigative stop for detention and the encounter was not a de facto arrest. The judge found that the police had reasonable articulable suspicion that defendant was engaged in, or about to engage in, criminal activity. Therefore, the officers lawfully stopped and frisked defendant.

As the judge pointed out in his opinion, on September 21, 2016, the TRPD received an anonymous tip indicating that defendant was distributing drugs from a room at a certain motel in Toms River and he was seen driving a red Mazda.

The following day, Reiser told Maloney that defendant was distributing drugs out of her Buick. She said he had picked up drugs in Newark, was on his way back to the motel in a red Mazda, and had a gun. Reiser corroborated information provided in the anonymous tip.

Moreover, officers from the TRPD conducted surveillance and observed defendant arrive in the motel parking lot in a red Mazda. Maloney and Chencharik approached defendant, drew their weapons, and ordered him to exit the car. Chencharik frisked defendant to determine if he was armed.

Chencharik detected a bulge in defendant's pocket and defendant admitted he was in possession of marijuana and pills. The judge found that the officers had recovered the evidence during the detention and defendant had not been subjected to a de facto arrest. Defendant was not arrested until after he admitted he was in possession of a CDS.

Defendant argues, however, that the officers "added to the intrusiveness of the detention by approaching the car with their badges displayed and guns drawn." He contends the "cumulative effect" of the officers' actions made the encounter more intrusive than a Terry stop. We are convinced, however, that the record supports the judge's finding that defendant was detained for investigation and the detention did not constitute a de facto arrest.

A-5939-17T4

As the record shows, the detention was no longer than necessary. The officer frisked defendant because the TRPD had been informed he had a gun. The officers did not humiliate defendant and there is no indication he faced extraordinary fear. During the detention, defendant was not handcuffed or placed in a police vehicle. We conclude the evidence was obtained during an investigative detention, not a de facto arrest.

B. <u>Reiser's Tip</u>.

Defendant argues that the judge erred by considering Reiser's tip to be the tip of a "concerned citizen." He contends the State failed to establish Reiser's veracity and the basis of her knowledge for the information she provided to the TRPD. He therefore argues that the police lacked reasonable suspicion to stop and frisk him and that the trial court should have suppressed the evidence recovered from him during the stop. Again, we disagree.

"[A] descriptive tip by an informant may contribute to a reasonable objective and particularized suspicion to serve as the basis for an investigatory stop." <u>State v. Richards</u>, 351 N.J. Super. 289, 300 (App. Div. 2002) (quoting <u>State v. Caldwell</u>, 158 N.J. 452, 467 (1999)). "[T]he reliability of an informant's tip must be analyzed in light of the totality of the circumstances . . . ." <u>State v.</u>

Williams, 364 N.J. Super. 23, 31-32 (2003) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983); State v. Novembrino, 105 N.J. 95, 122 (1987)).

"An informant's 'veracity' and 'basis of knowledge' are two highly relevant factors under the totality of the circumstances." State v. Zutic, 155 N.J. 103, 110 (1998) (citing State v. Smith, 155 N.J. 83, 92 (1998)). However, "[a] deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" Id. at 111 (quoting Gates, 462 U.S. at 233).

Furthermore, "'[a] report by a concerned citizen' or a known person is not 'viewed with the same degree of suspicion that applies to a tip by a confidential informant' or an anonymous informant." State v. Amelio, 197 N.J. 207, 212 (2008) (alteration in original) (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 390 (2000)). "When an informant is an ordinary citizen, New Jersey courts assume that the informant has sufficient veracity and require no further demonstration of reliability." Stovall, 170 N.J. at 362.

We are convinced the record supports the judge's finding that Reiser's tip consisted of information provided by an ordinary citizen. She identified herself to the police and they reasonably assumed she was providing reliable information. Moreover, Maloney testified that Reiser was upset because

defendant was using her car to engage in the distribution of narcotics, and her goal was to stop him from continuing to do so.

Defendant argues that Reiser had "suspect motives" to provide the police with "highly damaging information" about him. He claims her goal was to retain possession of the vehicle and that her relationship with defendant "had been essentially nonexistent for months." He also claims she was motivated by a belief he was cheating on her. These arguments are entirely without merit.

The police had no reason to suspect that Reiser was providing the information about defendant for some "suspect" reasons, nor were they required to question her to determine her motives for informing the police that defendant was engaged in criminal activity. She was an ordinary citizen who identified herself. Under the circumstances, the police reasonably assumed the information she provided was credible.

C. Impoundment of Vehicle.

Defendant argues that the State failed to show that the police lawfully impounded Reiser's car. He contends the State failed to provide sufficient detail about the dog's alerts when he examined the car. He also contends that the State did not present sufficient information to show the dog had been properly trained

16

and his alerts had been reliable. He therefore contends the State failed to establish it had probable cause to impound the car. We disagree.

Defendant argues that the State could only establish probable cause based on the dog's alerts if it produced proof from "controlled settings" that the dog had performed reliably in detecting the presence of narcotics. In support of that argument, he relies upon <u>Florida v. Harris</u>, 568 U.S. 237, 248 (2013). In this case, however, the State did not rely solely on the dog's alerts to establish probable cause to seize the Buick. The police had other information that established probable cause to impound the vehicle.

As noted, Reiser told the police that defendant had been using the Buick for the distribution of CDS. The officers conducted surveillance and observed defendant engaging in actions that were consistent with the distribution of CDS. Moreover, the police stopped and frisked defendant, and found he was in possession of a CDS. Reiser also reported that the Buick had been stolen. Thus, wholly aside from the dog's alerts, the police had probable cause to seize the car.

In addition, the police had independent justification to impound the car under N.J.S.A. 39:5-47, which provides that the New Jersey Motor Vehicle Commission:

> may authorize the seizure of a motor vehicle operated over the highways of this State when it has reason to

A-5939-17T4

believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances and may retain it in the name of the commission until such time as the identity of ownership is established . . . .

[Ibid.]

The statute authorizes the police to impound a vehicle they reasonably believe was stolen. State v. Terry, 232 N.J. 218, 234 (2018). Furthermore, "[t]he Fourth Amendment . . . is not offended if an automobile is seized or its operator temporarily detained when a law enforcement officer has a reasonable and articulable suspicion that the vehicle is unregistered or stolen." Ibid. (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)).

Defendant argues that the statute does not apply because there is no evidence the car was "operated over the highways" before the police impounded it. He asserts that before the officers seized the car, the officers did not determine that the vehicle was reported stolen. Defendant also asserts he was not afforded an opportunity to establish that he had lawful possession of the car. Defendant's arguments are unavailing.

Before they impounded the vehicle, officers at the TRPD were aware the vehicle had been reported stolen. The police also had information which suggested that it was being operated under "suspicious circumstances." As

18

noted, Reiser told the police that defendant was using the car for the distribution of drugs. In addition, the vehicle was at the motel's parking lot. Therefore, the officers could reasonably assume it had been operated on the State's highways. Therefore, N.J.S.A. 39:5-47 authorized the police to impound the vehicle.

### III.

Defendant argues that resentencing is required. He contends the sentencing judge failed to explain the bases for his findings of aggravating factors three and nine. He also contends the judge erred by failing to take into account his expression of remorse and acceptance of responsibility.

We apply a "deferential" standard in reviewing a lower court's sentencing determination. State v. Fuentes, 217 N.J. 57, 70 (2014). This court:

> must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Here, the sentencing judge found aggravating factors three (the risk that defendant will commit another offense), six (the extent of defendant's prior criminal record and the seriousness of the offenses for which he has been

19

convicted), and nine (the need for deterring defendant and others from violating the law). N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge stated there was a risk defendant will commit another offense and he gave that factor "heavy weight" based on defendant's criminal record.

The judge noted that this was defendant's third conviction of certain persons not to possess weapons, in violation of N.J.S.A. 2C:39-7(b). The judge pointed out that the legislative policy underlying that statute is clear. As provided in the statute, certain persons, like defendant, are not to possess weapons.

The judge observed that in this matter, defendant was found guilty of possessing a handgun, and he had a prior conviction for possession of a machine gun. The judge emphasized that there was a need to deter defendant and others from violating the law. Therefore, the judge gave "heavy weight" to aggravating factor nine.

The judge also found mitigating factor eleven (defendant's imprisonment would entail excessive hardship to himself or his dependents). N.J.S.A. 44-1(b)(11). The judge noted that defendant has a two-year-old child, and although he was not paying to support that child, the child would not have her father's

companionship and love while he is incarcerated. The judge gave mitigating factor eleven moderate weight.

The judge found that the aggravating factors outweighed the mitigating factor. As stated previously, the judge sentenced defendant to an aggregate term of twelve years of incarceration, with five years of parole ineligibility.

We reject defendant's contention that the judge failed to provide sufficient reasons for his findings of aggravating factors three and nine. The judge explained that defendant has a juvenile record, with three violations of probation. He also has eight municipal court convictions and six prior Superior Court convictions, which include two prior convictions for certain persons not to possess weapons. We are convinced that the sentencing judge provided a sufficient explanation for his findings.

Defendant contends the judge erred by failing to consider his remorse and acceptance of responsibility. The judge noted, however, that defendant was "honest and open and forthright and accepted responsibility for [his actions], but he understands that he's the architect of this situation and he stands here . . . as a result of his own conduct." Thus, the judge considered defendant's remorse and acceptance of responsibility.

A-5939-17T4

Defendant also contends resentencing is required to ensure that the judge did not consider a prior drug offense, which made him eligible for an extended term under N.J.S.A. 2C:43-6(f), as a basis for his findings on aggravating factors three and nine. However, as we have explained, defendant has an extensive criminal record, which includes adjudications as a juvenile, municipal court convictions, and six prior Superior Court convictions. Wholly aside from his prior conviction for the drug offense, defendant's criminal record provides a sufficient factual basis for the judge's findings of aggravating factors three and nine.

We therefore conclude that the judge complied with the sentencing guidelines and defendant's sentence represents a reasonable exercise of the court's sentencing discretion. We reject defendant's contention that resentencing is required.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5939-17T4